(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* – TORT – MOTOR VEHICLE TORT –
CONTRACT – EQUITABLE RELIEF – OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 1877CV- 1259C

Robert D. Beaupre
......................................................................................., Plaintiff(s)

v.

Seacoast Sales, Inc. et al.
......................................................................................., Defendant(s)

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve upon    Curran Antonelli, LLP

plaintiff's attorney, whose address is  22 Boston Wharf Rd., 7th Fl., Boston, MA 02210  an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

43 Appleton Way,   either before service upon plaintiff's attorney or within a reasonable time thereafter.
Lawrence, MA 01841

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Judith Fabricant, Esquire, at Salem, the
day of                                        , in the year of our Lord two thousand

Thomas M Driscoll Jr.
*Clerk*

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (see Mass. R. Civ. P. (d) (1-5):

As counsel for Defendants, I accept service of the Complaint in this action.

Dated: September 17, 2018

*Frederick B Tilly*

N.B.   TO PROCESS SERVER:-
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
       THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT

September 17, 2018

COMMONWEALTH OF
MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CASE NO.:

ROBERT D. BEAUPRE,

        Plaintiff,

    v.

SEACOAST SALES, INC. and JOHN
HADDAD,

        Defendants.

        )
        )
        )
        )
        )
        )
        )
        )
        )
        )
        )

## **COMPLAINT**

    Plaintiff Robert D. Beaupre (the "Plaintiff") hereby complains against defendants Seacoast Sales, Inc. and John Haddad (collectively, the "Defendants") as follows:

## **PARTIES**

    1.    Plaintiff Robert D. Beaupre ("Mr. Beaupre") is a natural person and resides at 37 Francesca Drive, Lynn, MA 01904.

    2.    Defendant Seacoast Sales, Inc. ("Seacoast") is a Maine corporation with a place of business at 59 Middle Street, Portland, ME 04101.

    3.    Upon information and belief, defendant John Haddad ("Mr. Haddad") is a natural person and the owner and chief executive officer of Seacoast with a place of business at 59 Middle Street, Portland, ME 04101.

1

## JURISDICTION AND VENUE

4.     On or around April 5, 2018, Mr. Beaupre filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination, more than ninety (90) days prior to the filing of this Complaint.

5.     The Court has jurisdiction over this matter pursuant to G. L. c. 151, § 9 and G. L. c. 212, § 4.

6.     Venue is proper in this Court pursuant to G. L. c. 223, § 1.

## FACTS

### Mr. Beaupre's Relationship with Mr. Haddad

7.     Mr. Beaupre is a sixty-seven (67) year old salesperson with over forty (40) years of experience in the food and meat retail industry.

8.     From May 1973 to October 2016, Mr. Beaupre worked for Demakes Enterprises and Old Neighborhood Foods ("Old Neighborhood"), a family-owned meat and deli manufacturer headquartered in Lynn, Massachusetts. Beginning as a route salesman, Mr. Beaupre rose through Old Neighborhood's ranks and was named the Vice President of Retail Sales in 1999, a position he held until November 2016.

9.     Mr. Beaupre and Mr. Haddad's relationship dates back nearly twenty (20) years to Mr. Beaupre's time at Old Neighborhood.

10.     In fact, it was Mr. Beaupre who provided Mr. Haddad with his start in the industry. At the outset, Mr. Beaupre helped secured certain accounts, including Hannaford's Supermarkets, Cedar's Mediterranean Foods and Cooper Farms, for Seacoast and Mr. Haddad.

11.     In 2013, Mr. Haddad offered Mr. Beaupre a job at Seacoast, which Mr. Beaupre declined.

12.     About one (1) year later, Mr. Haddad once again propositioned Mr. Beaupre, this time offering Mr. Beaupre a role as an outside consultant to Seacoast. Mr. Beaupre accepted Mr. Haddad's offer and began consulting part-time for Seacoast.

## Mr. Beaupre's Employment at Seacoast

13.     In the summer of 2016, Mr. Haddad again offered Mr. Beaupre a job at Seacoast, this time as Seacoast's Director of Sales. That role offered Mr. Beaupre the opportunity to manage and oversee all of Seacoast's sales operations – which spanned the East Coast from Maine to North Carolina.[1]

14.     In exchange for his services, Mr. Haddad offered Mr. Beaupre a yearly salary of $110,000.00 and a commission rate of two (2) cents per pound for any tonnage sold over and above the amount necessary to cover, on a gross basis, his yearly salary. The offer also called for Mr. Beaupre to participate in Seacoast's 401(k) plan, to which Seacoast would make contributions in the yearly amount of $11,000.00. The offer also included full payment of Mr. Beaupre and his family's health insurance through Seacoast's health insurance plan.

15.     In reliance upon the substantial benefits of the opportunity, on or around November 1, 2016, Mr. Beaupre accepted Seacoast and Mr. Haddad's offer and left Old Neighborhood to become Seacoast's Director of Sales.

16.     As Seacoast's Director of Sales, Mr. Beaupre, using contacts and relationships he amassed over his four-decade tenure in the industry, positioned Seacoast to conduct business

---

[1]     At all times pertinent, Mr. Beaupre was a Massachusetts employee of Seacoast. He generally performed his responsibilities and duties from his home office in Lynn, Massachusetts. Mr. Beaupre also routinely traveled throughout Massachusetts visiting clients to review sales data and conducting sales meetings with prospective clients.

with some of the largest retail chains in the country, including Market Basket, Shaw's Supermarkets, Hannaford's Supermarkets and BJ's Wholesale Club.

17.    Mr. Beaupre also managed numerous other accounts, including an account with Schreiber Foods, that grossed a substantial portion of Seacoast's revenue.

18.    Mr. Beaupre continuously received positive feedback on his job performance from Mr. Haddad and never received a negative performance review.

### Seacoast and Mr. Haddad's Discrimination Against Mr. Beaupre

19.    Approximately one (1) year after Mr. Beaupre was hired, Mr. Haddad began to express concern about Mr. Beaupre's employment with Seacoast, specifically with regard to Mr. Beaupre's age.

20.    On or around November 1, 2017, Mr. Haddad approached Mr. Beaupre and stated that the total costs of Seacoast's health insurance were increasing.  Mr. Haddad blamed the increase in costs solely on Mr. Beaupre's age.  At the time, Mr. Beaupre was sixty-six (66) years old.

21.    During that same conversation, Mr. Haddad, citing the effect of Mr. Beaupre's age on Seacoast's health insurance plan, stated that Seacoast would no longer cover Mr. Beaupre and his family under Seacoast's plan as previously agreed to.

22.    Mr. Haddad further stated that Seacoast would not cover any of the cost of Mr. Beaupre's health insurance unless Mr. Beaupre, due to his age, switch to a Medicare plan.  As a result of Mr. Haddad's demand, Mr. Beaupre reluctantly switched to a Medicare plan, despite the agreement to the contrary.

4

23.    Thereafter, Mr. Haddad presented Mr. Beaupre with a separate monthly check in the approximate amount of $785.00 to cover the cost of Mr. Beaupre's health insurance under the Medicare plan.

24.    On at least one (1) occasion, Mr. Haddad presented Mr. Beaupre with a check for the health insurance payment and described such payment as an "Auto Allowance." Not once prior to or after forcing Mr. Beaupre to switch to a Medicare plan did Seacoast or Mr. Haddad pay Mr. Beaupre any automobile allowance or reimbursement.

25.    Not long after Haddad forced Mr. Beaupre to switch to a Medicare plan, Mr. Haddad once again took issue with the effect of Mr. Beaupre's age on Seacoast – this time with regards to Seacoast's 401(k) plan.

26.    On this occasion, Mr. Beaupre approached Mr. Haddad and inquired as to when he would receive his yearly 401(k) contribution from Seacoast pursuant to the agreement.

27.    In response Mr. Haddad expressed his concern that, due to his age, Mr. Beaupre would be able to withdraw Seacoast's 401(k) contributions at any time.

28.    Mr. Haddad then told Mr. Beaupre that he could not participate in Seacoast's 401(k) plan and that Seacoast would not make any contribution to him.

29.    In fact, Mr. Haddad never allowed Mr. Beaupre to participate in Seacoast's 401(k) plan and Seacoast never made a 401(k) contribution to Mr. Beaupre because of his age.

30.    Around the same time Mr. Haddad and Seacoast revoked and rescinded the agreed-to privileges and conditions of Mr. Beaupre's employment due to his age, Seacoast hired Mr. Haddad's brother-in-law, who was approximately twenty (20) years Mr. Beaupre's junior.

31.    Mr. Haddad's brother-in-law was also employed in Massachusetts and performed similar responsibilities and duties to Mr. Beaupre. In fact, Mr. Haddad's brother-in-law began

meeting with Mr. Haddad and accompanying Mr. Haddad on sales visits in place of Mr.

Beaupre.

32.     On or around January 5, 2018, and after Seacoast and Mr. Haddad refused to pay

Mr. Beaupre and his family's health insurance and to make contributions to Mr. Beaupre's

401(k) pursuant to the agreement, Seacoast terminated Mr. Beaupre's employment.  In

terminating Mr. Beaupre, Mr. Haddad simply stated that Seacoast was "changing directions" and

that Mr. Beaupre's services were no longer needed.

33.     Mr. Beaupre was sixty-six (66) years old at the time Seacoast terminated his

employment.

34.     At the time Mr. Beaupre's employment was terminated, Mr. Beaupre was on the

verge of closing two (2) significant new accounts – accounts that Seacoast would not have had

access to without Mr. Beaupre.

35.     Immediately before Mr. Beaupre was terminated, Seacoast submitted, and was

negotiating, a proposal to BJ's Wholesale Club for the sale of two and one-half (2.5) million

pounds of ham with a gross sales price of $6,000,000.00.  Seacoast also submitted a proposal to

BJ's Wholesale Club one (1) week prior to Mr. Beaupre's termination for the sale of millions of

pounds of cheese.

36.     Mr. Beaupre was on also the verge of closing a ten (10) million-pound sale with

Market Basket.  In fact, Mr. Beaupre had scheduled a meeting in January 2018 with

representatives from Market Basket; however, Mr. Beaupre was terminated before the meeting

occurred.  Seacoast also submitted a proposal to Market Basket one (1) week prior to Mr.

Beaupre's termination for the sale of millions of pounds of cheese.

37.    Seacoast and Mr. Haddad did not have a relationship with BJ's Wholesale Club or Market Basket prior to Mr. Beaupre's employment at Seacoast and the foregoing opportunities were solely a result of Mr. Beaupre's efforts.

38.    Upon information and belief, Seacoast and/or BJ's Wholesale Club and Market Basket entered into one (1) or more of the above agreements.

39.    Upon termination, Mr. Beaupre's unemployment claim was denied due to Seacoast's failure to pay Massachusetts unemployment taxes, as required by law.

**COUNT I**
**(Discrimination on the Basis of Age in Violation of G. L. c. 151B, § 4)**
**(Against Seacoast)**

40.    Mr. Beaupre repeats and realleges the foregoing allegations as if fully set forth herein.

41.    G. L. c. 151B, § 4 provides that it is unlawful for "an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discrimination against such individual in compensation or in terms, conditions or privileges of employment . . . ." Mass. Gen. L. c. 151B, § 4(1B) (2018).

42.    As alleged herein, Seacoast discriminated against Mr. Beaupre in the terms and conditions of his employment with Seacoast by refusing to allow Mr. Beaupre to participate in Seacoast's health insurance plan as agreed to and requiring Mr. Beaupre to enroll in a Medicare plan.

43.    Seacoast also discriminated against Mr. Beaupre in the terms and conditions of his employment with Seacoast by refusing to allow Mr. Beaupre to participate in Seacoast's 401(k) plan as agreed to.

7

44.    Seacoast also terminated Mr. Beaupre's employment and replaced him with Mr. Haddad's brother-in-law, who was approximately twenty (20) years Mr. Beaupre's junior.

45.    Seacoast's discrimination against, and termination of, Mr. Beaupre were solely a result of Mr. Beaupre's age.

46.    As a result of Seacoast's actions, Mr. Beaupre has suffered, and will continue to suffer, damages.

## COUNT II
### (Discrimination on the Basis of Age in Violation of G. L. c. 151B, § 4)
### (Against Mr. Haddad)

47.    Mr. Beaupre repeats and realleges the foregoing allegations as if fully set forth herein.

48.    G. L. c. 151B, § 4 states that it is unlawful for "any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted to protected by this chapter . . . ." Mass. Gen. L. c. 151B, § 4(4A) (2018).

49.    Upon information and belief, at all times relevant, Mr. Haddad was the owner and chief executive officer of Seacoast.

50.    During Mr. Beaupre's employment at Seacoast, Mr. Haddad, on several occasions, made negative and derogatory comments about Mr. Beaupre's age and its effect on Seacoast's business and financial affairs.

51.    Mr. Haddad was the individual that determined that Seacoast would no longer cover Mr. Beaupre and his family under Seacoast's health insurance plan. Mr. Haddad was also the individual that forced Mr. Beaupre to enroll in a Medicare plan despite Mr. Beaupre's agreement with Seacoast.

8

52.   Mr. Haddad was the individual that determined that Seacoast would not allow Mr. Beaupre to participate in Seacoast's 401(k) plan despite Mr. Beaupre's agreement with Seacoast.

53.   Mr. Haddad was the individual who terminated Mr. Beaupre and replaced him with Mr. Haddad's brother-in-law, who was approximately twenty (20) years Mr. Beaupre's junior.

54.   Mr. Haddad's statements and decisions were solely a result of Mr. Beaupre's age.

55.   Accordingly, Mr. Haddad was personally responsible for Seacoast's discrimination against, and termination of, Mr. Beaupre.

56.   As a result of Mr. Haddad's actions, Mr. Beaupre has suffered, and will continue to suffer, damages.

## COUNT III
### (Breach of Contract)
### (Against Seacoast)

57.   Mr. Beaupre repeats and realleges the foregoing allegations as if fully set forth herein.

58.   Mr. Beaupre and Seacoast entered in an agreement whereby, in exchange for his services, Seacoast agreed: (i) to pay Mr. Beaupre a yearly salary of $110,000.00 and a commission rate of two (2) cents per pound for any tonnage sold over and above the amount necessary to cover, on a gross basis, his yearly salary; (ii) to pay Mr. Beaupre and his family's health insurance through Seacoast's health insurance plan; and (iii) to contribute $11,000.00 per year to Mr. Beaupre through Seacoast's 401(k) plan.

59.   As stated herein, Seacoast breached its agreement with Mr. Beaupre by failing to pay for Mr. Beaupre and his family's health insurance under Seacoast's health insurance plan.

60.     Seacoast also breached its agreement with Mr. Beaupre by refusing to allow Mr. Beaupre to participate in Seacoast's 401(k) plan and failing to make its yearly contribution.

61.     Mr. Beaupre has suffered monetary and other damages as a result of Seacoast's breach of the agreement.

## COUNT IV
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (Against Seacoast)

62.     Mr. Beaupre repeats and realleges the foregoing allegations as if fully set forth herein.

63.     Immediately prior to his termination, Mr. Beaupre was on the verge of closing two (2) new accounts on behalf of Seacoast.

64.     Seacoast did not have access to such accounts prior to Mr. Beaupre's employment at Seacoast.

65.     Such accounts were solely a result of Mr. Beaupre's efforts during his tenure at Seacoast.

66.     Mr. Beaupre was terminated prior to the consummation of the agreements concerning such accounts.

67.     Upon information and belief, Seacoast entered into one (1) or more of the agreements after Mr. Beaupre's termination.

68.     Accordingly, Mr. Beaupre's termination was done to deprive Mr. Beaupre of commissions that were about to be due to him as upon the closing of such accounts.

69.     As a result of Seacoast's action, Mr. Beaupre has suffered, and will continue to suffer, damages.

## REQUEST FOR RELIEF

WHEREFORE, Mr. Beaupre respectfully requests that the Court:

a.      Enter judgment in favor of Mr. Beaupre on all his claims;

b.      As to Count I, find and rule in favor of Mr. Beaupre on his claim for discrimination on the basis of age in violation of G. L. c. 151B, § 4 against Seacoast;

c.      As to Count II, find and rule in favor of Mr. Beaupre on his claim for discrimination on the basis of age in violation of G. L. c. 151B, § 4 against Mr. Haddad;

d.      As to Count III, find and rule in favor of Mr. Beaupre on his claim for breach of contract against Seacoast;

e.      As to Count IV, find and rule in favor of Mr. Beaupre on his claim for breach of the implied covenant of good faith and fair dealing against Seacoast;

f.      Award Mr. Beaupre his damages in an amount to be determined at trial plus interest and costs;

g.      Award Mr. Beaupre his attorneys' fees and costs incurred in bringing this action; and

h.      Grant such other relief as the Court deems meet and proper.

## MR. BEAUPRE DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE WHETHER IN THIS COMPLAINT OR ANY AMENDED COMPLAINT

RESPECTFULLY SUBMITTED,

MR. ROBERT D. BEAUPRE,

By his attorneys,

Thomas H. Curran, BBO #550759
tcurran@curranantonelli.com
Zachary J. Gregoricus, BBO #699578
zgregoricus@curranantonelli.com
Curran Antonelli, LLP
22 Boston Wharf Road
7th Floor
Boston, MA 02210
Telephone: (617) 207-8670
Facsimile: (857) 263-5215

Dated: August 27, 2018

12