**United States District Court**
**District of Massachusetts**

```
_____
                            )
Robert Beaupre,             )
                            )
        Plaintiff,          )
                            )
        v.                  )    Civil Action No.
                            )    18-12080-NMG
Seacoast Sales, Inc., et al., )
                            )
        Defendants.         )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of the alleged discriminatory treatment and dismissal of Robert Beaupre ("Beaupre" or "plaintiff") from Seacoast Sales, Inc. ("Seacoast") by his boss, John Haddad ("Haddad," collectively with Seacoast, "defendants"). Pending before the Court is defendants' motion for summary judgment on Beaupre's claims.

I.  **Background**

   A.  **The Parties**

Defendant Seacoast is a Maine corporation with its headquarters in Portland, Maine. It is a food broker that

assists manufacturers in distributing various food products to grocery stores in several states.

Defendant Haddad is a resident of Portland, Maine.  He was an incorporator of Seacoast in 2003 is now its co-owner and Chief Executive Officer ("CEO").

Plaintiff Beaupre is a resident of Lynn, Massachusetts.

**B.  Plaintiff's Employment at Seacoast**

Following Seacoast's incorporation in 2003, its first customer was Old Neighborhood Foods ("Old Neighborhood"), a deli products manufacturer in Lynn, Massachusetts.  Beaupre was then Vice President of Retail Sales for Old Neighborhood and had worked in various roles at that company over several decades.

In 2014, Haddad hired Beaupre to work part-time as an outside consultant for Seacoast.  During the next several years, Haddad and Beaupre discussed the possibility of a full-time position for Beaupre at Seacoast.  In 2016, Haddad offered plaintiff a newly-created sales position at Seacoast.  Prior to Beaupre's hiring, Haddad had been the only salesperson at Seacoast.

Plaintiff accepted the offer and began work as Seacoast's Director of Sales in November, 2016.  At the time, he was 65 years old and had more than 40 years of relevant work

experience.  Defendants submit that Beaupre was hired specifically to develop new business with Market Basket, BJ's Wholesale Club ("BJ's"), Shaw's and Restaurant Depot.  Beaupre denies that his employment was thus limited and maintains that his responsibility included expanding sales of all existing and future accounts.

### C.  The Employment Agreement and Benefits Dispute

Although there was no written employment agreement between Seacoast and Beaupre, the parties agreed that Beaupre was to receive an annual salary of approximately $110,000 for his services.  They discussed a plan for Beaupre to receive a commission if his sales revenue exceeded his salary.  Defendants also submit that Beaupre had the right to participate in the company's health insurance and 401(k) retirement plans.

In October, 2017, the insurance broker of Seacoast's health insurance plan informed Haddad that Beaupre was eligible for Medicare.  After Haddad discussed the matter with him, Beaupre agreed to enroll in a Medicare plan in December, 2017.  Haddad contends that he left the decision to switch plans up to Beaupre but Beaupre responds that Haddad forced him to leave Seacoast's plan because his age was driving up the premiums.  Seacoast continued to pay Beaupre's health insurance premiums under the Medicare plan.

Plaintiff alleges that Haddad informed him in December, 2017, that he would no longer be allowed to participate in Seacoast's 401(k) plan because of his age.  Defendants rejoin, however, that Haddad never prohibited Beaupre from participating in its plan and that Seacoast even attempted to make a contribution to his 401(k) account.  Beaupre replies that the attempted contribution occurred only after he was terminated and this litigation had commenced.

**D.  Hiring of Peter McArdle**

In November, 2017, Haddad hired his brother in law, Peter McArdle ("McArdle"), who is approximately 20 years younger than Beaupre.  Defendants maintain that McArdle was hired to develop a beverage division for Seacoast and that there was no plan to involve him in Seacoast's food business.  Plaintiff responds that McArdle began selling food products for Seacoast within weeks of his hiring and asked to accompany plaintiff on trips to clients and retailers to which Seacoast sold food products.

Shortly after hiring McArdle, Haddad promoted him to President of Seacoast.

**E.  Plaintiff's Performance and Termination**

During his first year of employment, Beaupre's sales were under $15,000 and were all attributable to existing Seacoast

customers.  His effort to secure new business from various grocery store chains was either ongoing or unsuccessful.

In November, 2017, Haddad and Beaupre met for a performance review during which they discussed the fact that Beaupre's sales had not covered his expenses.

In January, 2018, Haddad terminated plaintiff's employment, citing his poor sales performance.  Beaupre contends that McArdle assumed most, if not all of his former responsibilities immediately after his termination.

### F.  Procedural History

In April, 2018, Beaupre filed an action with the Massachusetts Commission Against Discrimination ("MCAD").  In August, 2018, he filed a civil complaint in the Massachusetts Superior Court for Essex County alleging discrimination on the basis of age in violation of M.G.L. c. 151B § 4 against both defendants (Counts I and II) and breach of contract and of the implied covenant of good faith and fair dealing against Seacoast (Counts III and IV).

Defendants timely removed the case to this Court on diversity jurisdiction ground and, in July, 2020, filed the instant motion for summary judgment.

## II.  Motion for Summary Judgment

### A.  Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all

reasonable inferences in that party's favor.  O'Connor v.

Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

appropriate if, after viewing the record in the non-moving

party's favor, the Court determines that no genuine issue of

material fact exists and that the moving party is entitled to

judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B.  Arguments of the Parties

Beaupre alleges that defendants discriminated against him

on the basis of age in violation of M.G.L. c. 151B § 4.  He

contends that 1) defendants terminated his employment solely

because of his advanced age and replaced him with a younger

employee and 2) unlawfully prohibited him from participating in

Seacoast's health care and 401(k) plans despite their agreement

to the contrary.  That conduct, Beaupre avers, constitutes not

only unlawful age discrimination but also a breach of his

employment contract.  Finally, Beaupre alleges that Seacoast

breached the implied covenant of good faith and fair dealing by

terminating his employment in order to deprive him of earned

commissions.

With respect to the age discrimination claims, defendants

respond that Beaupre can neither establish a prima facie case of

age discrimination nor demonstrate that he was denied access to

company benefits because of his age.  They also submit that

plaintiff cannot succeed on his remaining claims because 1) he was an at-will employee without a written employment contract, 2) the alleged oral employment agreement is unenforceable under the statute of frauds and 3) there is no evidence that he was terminated to deprive him of commissions.

**C. Analysis**

**1. Counts I and II – Violation of M.G.L. c. 151B § 4 (Age Discrimination)**

As a procedural matter, plaintiff's age discrimination claims relate to both the termination of his employment (Count I) and the denial of benefits (Count II).  Nevertheless, the allegations in both counts require the same legal analysis and the parties treat the claims as interrelated.  Accordingly, this Court will address together all claims in Counts I and II.

Massachusetts law provides that it is unlawful

> [f]or an employer in the private sector, . . . because of the age of any individual, . . . to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

M.G.L. c. 151B § 4(1B).  When direct evidence of age discrimination is unavailable, Massachusetts courts apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework, the plaintiff

must first establish a prima facie case of discrimination by
demonstrating that he or she

> (1) was a member of the class protected by G. L. c. 151B
> (that is, over forty years of age); (2) had performed [his
> or] her job at an acceptable level; (3) was terminated; and
> (4) was replaced by a similarly or less qualified younger
> person.

Knight v. Avon Prods., 438 Mass. 413, 420-21 (2003).  With
respect to the fourth element, the plaintiff must show that the
employer "sought some form of replacement performance,"
demonstrating a "continued need for the same services and
skills." Hidalgo v. Overseas Condado Ins. Agencies, 120 F.3d
328, 332-33 (1st Cir. 1997) (internal citations and quotations
omitted).

Once a prima facie case has been made, the burden shifts to
the defendants to rebut the presumption of discrimination by
offering a legitimate, nondiscriminatory reason for their
employment action. See Blare, 419 Mass. at 441.  If they do so,
the plaintiff must then produce evidence demonstrating that the
defendants' stated reason was pretext. Id. at 443-45.

There is no dispute that Beaupre has satisfied the first
and third elements with respect to his prima facie case but
defendants dispute that he has established the second and fourth
elements.  They assert that 1) Beaupre's low sales revenue
indicates that he did not perform his job at an acceptable level

and 2) he was not replaced by McArdle, who was hired before Beaupre's termination and was assigned different responsibilities.  They insist that even if Beaupre could demonstrate that McArdle was hired as his replacement, McArdle possesses far superior qualifications.

Viewing the evidence in the light most favorable to plaintiff, a reasonable factfinder could find that Beaupre has met all four elements required to establish a prima facie case of discrimination under M.G.L. c. 151B § 4.  The undisputed evidence shows that Beaupre was hired to be the Director of Sales for Seacoast.  He has proffered evidence that he was responsible for a broad range of tasks beyond merely acquiring new business from a small number of specific entities and, other than his low first-year sales figures, there is no evidence that his performance was less than adequate.  In fact, plaintiff testified that Haddad gave him a positive performance review in November, 2017. See Blare v. Husky Injection Molding Sys. Boston, 419 Mass. 437, 446 (1995) (concluding that the record supported a prima facie case where "[t]he periodic reviews in the plaintiff's file . . . indicate that he consistently and conscientiously performed his job").

Furthermore, Beaupre has presented evidence that he was replaced by a similarly-qualified much younger person.  It is

undisputed that Beaupre was 66 years old and McArdle 47 years
old at the time Beaupre was terminated.  Although McArdle was
perhaps initially hired to help create a beverage division at
Seacoast, he assumed most of Beaupre's responsibilities
immediately after Beaupre's termination.  The fact that McArdle
was hired prior to Beaupre's termination and did not assume the
title of Director of Sales is immaterial to the replacement
analysis. See Loeb v. Textron, Inc., 600 F.2d 1003, 1013 n.11
(1st Cir. 1979) ("A replacement need not be sought from outside
the company, of course, nor need he be designated formally as
such.").  With respect to qualifications, both men had many
years of relevant experience.  Although McArdle has extensive
managerial experience in the beverage industry, there is no
indication that he was even as experienced as Beaupre in the
sale of food products.  Ultimately, the comparison of the job
responsibilities and qualifications of each employee is a
question of material fact that is best suited for a jury to
determine.

In response to plaintiff's alleged establishment of a prima
facie case of discrimination, defendants assert that Beaupre
performed poorly as Director of Sales, thus warranting his
termination.  They emphasize that Beaupre generated less than
$15,000 in sales revenue during his first year at Seacoast,

substantially less than his salary.  Accordingly, defendants
have proffered a legitimate, nondiscriminatory reason for his
termination.  Thus, plaintiff must demonstrate that the
proffered reason was a mere pretext for discrimination.

Once again viewing the record in the light most favorable
to plaintiff, Beaupre has raised a genuine dispute as to whether
defendants' stated reason for terminating his employment was
pretextual.  Despite defendants' claim that they were
disappointed with the sales revenue generated by plaintiff,
Beaupre has testified that Haddad expressed satisfaction with
his performance at a meeting in November, 2017.  Beaupre has
provided consistent text messages that were sent to him by
Haddad in December, 2017, and evidence that at least some of his
former job responsibilities were assumed by the younger McArdle
following his termination.

Defendants maintain that they are entitled to the so-called
"same actor inference," which creates "a strong inference . . .
that discrimination was not a determining factor" in an
employee's termination where the person who hired and fired are
the same. Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 46
(1st Cir. 2019).  The Supreme Judicial Court of Massachusetts
has stated, however, that it is inappropriate for a court to
apply such an inference on summary judgment. See Verdrager v.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 474 Mass.
382, 404 n.32 (2016) (concluding that considering the same actor
inference on summary judgment would be inconsistent with the
protocol that we draw all reasonable inferences in the light
most favorable to the plaintiff).

Finally, the record indicates that a reasonable jury could
find that Beaupre was denied participation in Seacoast's
healthcare and retirement plans because of his age.  The
evidence submitted by plaintiff indicates that Haddad informed
him in late 2017 that he was no longer welcome to participate in
the healthcare and 401(k) plans offered by Seacoast because of
concerns related to his advanced age.  In fact, the record
establishes that Haddad encouraged Beaupre to enroll in a
Medicare plan instead of Seacoast's healthcare plan.  Although
defendants explain that they eventually attempted to contribute
to Beaupre's 401(k) account, plaintiff has countered that the
attempt occurred only after his termination and the commencement
of litigation and was conditioned on the waiver of his rights to
sue defendants.  Accordingly, there is a clear dispute of
material fact as to the alleged denial of benefits.

Because a reasonable factfinder could determine that
defendants were motivated by age-based discrimination in denying
benefits to plaintiff and terminating his employment,

defendants' motion for summary judgment will, with respect to
Counts I and II, be denied.

### 2. Count III - Breach of Contract

Defendants contend that plaintiff cannot sustain his breach
of contract claim because 1) he was an at-will employee who can
be terminated for any reason, 2) the oral employment agreement
cannot be enforced under the statute of frauds and 3) he
suffered no damages.

To prove a breach of contract claim under Massachusetts
law, a plaintiff must demonstrate that an enforceable contract
existed, the defendant breached that contract and the plaintiff
suffered damages. See Valle v. Powertech Indus. Co., Ltd., 381
F. Supp. 3d 151, 160 (D. Mass. 2019).  At-will employees cannot
generally succeed on such a claim, however, because they may be
terminated for any reason at any time. See Merricks v. Savers,
Inc., 2012 U.S. Dist. LEXIS 1568, at *15 (D. Mass. 2012);
Bergeson v. Franchi, 783 F. Supp. 713, 717 (D. Mass. 1992).
Employees are considered to be employed at will in the absence
of a contract for a definite period of employment. Cf. Willitts
v. Roman Catholic Archbishop, 411 Mass. 202, 209 (1991)
("Because the plaintiff's employment contract contained a
definite period of employment, she was not an employee at
will.").

The parties dispute whether Beaupre was an at-will employee.  Defendants contend that he was employed at-will because Seacoast did not promise to employ him for a definite term.  Plaintiff responds that defendants' assertion lacks factual support and insists that Seacoast promised to employ him for a definite term.

Although he now maintains that he was promised employment for a term of 10 years, Beaupre failed to so allege in his complaint.  Indeed, Count III of the complaint alleges only that Seacoast breached its agreement with Beaupre by 1) failing to pay for Beaupre's health insurance under the company's plan and 2) refusing to allow Beaupre to participate in the company's 401(k) plan.  The complaint contains no allegations that defendants promised him employment for a definite term.  Summary judgment "is not a procedural second chance to flesh out inadequate pleadings." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990); see also Nieves v. University of P.R., 7 F.3d 270, 280 (1st Cir. 1993) (explaining that "a party may not generate a trialworthy dispute at summary judgment merely by presenting unsubstantiated allegations in its memoranda or briefs").

Although at-will employees generally cannot succeed on breach of contract claims, Massachusetts law contains narrow

exceptions for violations of public policy or to prevent unjust
enrichment of an employer. <u>Merricks</u>, 2012 U.S. Dist. LEXIS 1568,
at *15.  The public policy exception is limited to circumstances
in which at-will employees

> are terminated for asserting a legally guaranteed right
> (e.g. filing workers compensation claims), for doing what
> the law requires (e.g. serving on a jury), or for refusing
> to do that which the law forbids (e.g. committing perjury).

<u>Id.</u> at *16 (quoting <u>Smith-Pfeffer</u> v. <u>Superintendent of Walter E.</u>
<u>Fernald State School</u>, 404 Mass. 145, 149-50 (1989)).  Beaupre
makes no such allegations and thus the public policy exception
is inapplicable here.

The exception for unjust enrichment is limited to cases in
which an employer "fires an employee and thereby deprives him or
her of bonuses, commissions, or wages." <u>Id.</u> at 15-16, quoting
<u>Wright</u> v. <u>Shriners Hosp. for Crippled Children</u>, 412 Mass. 469,
477 n.1 (1992).  That exception is also referred to as the
exception for breach of the covenant of good faith and fair
dealing. <u>Id.</u>  Because Beaupre alleges in Count IV such a breach
based on the claim that Seacoast terminated his employment to
deprive him of commissions, this Court will analyze whether
summary judgment is appropriate on that claim.

In any event, even if Beaupre were not an at-will employee, defendants would be entitled to summary judgment on plaintiff's breach of contract claim.

First, with respect to the 401(k) plan, the record indicates that employees were not eligible to participate until they had completed one year of employment and 1,000 working hours. Because the terms of the plan make it impossible for the employee to qualify within one year, the contract is unenforceable under the statute of frauds as to the 401(k) plan. See Moog, Inc. v. ClearMotion, Inc., 2020 U.S. Dist. LEXIS 194913, at *14 (D. Mass. 2020) ("Under Massachusetts law, the Statute of Frauds . . . requires that any contract that cannot be fully performed within one year of its making be reduced to writing to be enforceable."). In his opposition, Beaupre contends that because he relied on defendants' promises they cannot invoke the statute of frauds to prevent enforcement of the contract. He failed to plead promissory estoppel or detrimental reliance in his complaint, however, and therefore he may not rely on such legal theories now. See Calvi v. Knox County, 470 F.3d 422, 431 (1st Cir. 2006) ("[Plaintiff] is not entitled to raise new and unadvertised theories of liability for the first time in opposition to a motion for summary judgment.").

Second, with respect to the healthcare plan, there is no evidence in the record to indicate that Beaupre incurred damages as a result of defendants' alleged breach of his employment contract.  Indeed, plaintiff admits that defendants paid the premiums owed under the Medicare plan and that coverage was similar to his coverage under Seacoast's plan.  Because damages are an essential element of a breach of contract claim, <u>see</u> <u>Valle</u>, 381 F. Supp. 3d at 160, that claim is unavailing.

Accordingly, defendants' motion for summary judgment will, with respect to Count III, be allowed.

### 3.  Count IV – Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants assert that there is no evidence on the record to support plaintiff's claim that defendants terminated him to deprive him of commissions.  For that reason, defendants submit they are entitled to summary judgment on Count IV.

Massachusetts courts have recognized an implied covenant of good faith and fair dealing in every employment relationship, including some at-will relationships. <u>See</u> <u>Merricks</u>, 2012 U.S. Dist. LEXIS 1568, at *15; <u>Wright</u>, 412 Mass. at 477 n.1.  One of only two exceptions to the general rule that employers cannot be held liable for the termination of at-will employees, the

implied covenant of good faith and fair dealing "is very narrow
and fact specific" and courts only impose liability where

> employers would unjustly benefit financially by depriving
> the employees of future compensation earned for past
> services.

Bergeson, 783 F. Supp. at 717 (citing Fortune v. National Cash
Register Co., 373 Mass. 96, 102 (1977)).

Beaupre submits that Seacoast terminated his employment to
deprive him of commissions that would have been due to him upon
securing two new accounts for Seacoast, namely BJ's and Market
Basket, which he declares were imminent.

First, it is undisputed that the oral employment agreement
between Beaupre and Seacoast did not contemplate the payment of
commissions until Beaupre generated enough sales revenue to
exceed his salary.  In light of the fact that Beaupre did not
come close to that prerequisite during his first year at
Seacoast, it appears unlikely that he would have been entitled
to a commission even if he had procured the prospective accounts
before he was fired.

Furthermore, it is undisputed that neither account was
procured during plaintiff's employment and, although plaintiff
asserts in his complaint that Seacoast got those accounts after
his termination, Beaupre admits in his November, 2019 deposition

that he has no personal knowledge as to whether either transaction was eventually consummated. "The <u>Fortune</u> doctrine does not protect interests contingent on an event that has not occurred." <u>Harrison</u> v. <u>NetCentric Corp.</u>, 433 Mass. 465, 485 (2001). While employees are generally entitled to commissions on sales that were already made, they are not entitled to commissions on sales yet to be completed. <u>Compare</u> <u>Gram</u> v. <u>Liberty Mut. Ins. Co.</u>, 384 Mass. 659 (1981) (holding that the discharged employee was entitled to commissions from sales already made), <u>with</u> <u>Smith</u> v. <u>Unidine Corp.</u>, 2017 Mass. Super. LEXIS 137, at *15-16 (Mass. Super. 2017) (holding that there was no breach of the implied covenant of good faith and fair dealing where commissions were not yet earned by the employees prior to their termination).

Accordingly, defendants' motion for summary judgment will, with respect to Count IV, be allowed.

**ORDER**

For the foregoing reasons, the motion of defendants John Haddad and Seacoast Sales, Inc. for summary judgment (Docket No. 61) is, with respect to Counts III and IV, **ALLOWED,** but otherwise, **DENIED.**


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 16, 2020